UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS J. MONEHEN,

       Petitioner,

                                    Case No. 1:06-cv-73
v.                                       Hon. Janet T. Neff

MARY BERGHUIS,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.     Background**

A jury convicted petitioner of one count of second-degree criminal sexual conduct, M.C.L. § 750.520c.  *People v. Dennis James Monehen*, No. 229626 (Mich. App. Dec. 6, 2002).  He was sentenced to a term of 7 1/2 to 15 years imprisonment.  *Id.*

The Michigan Court of Appeals summarized that events giving rise to this offense as follows:

> Defendant, a middle school math teacher for twenty-nine years, was charged with six counts of second-degree criminal sexual conduct (CSC) involving three female students.  All of the alleged conduct took place during school hours and in defendant's classroom.  The first student, K.W., testified that she was in defendant's sixth-hour math class during the 1998-1999 school year.  On one occasion, she approached defendant's desk to ask for assistance.  She stood next to defendant while he pointed to a poster on the wall.  When defendant pointed, he touched the side of the victim's breast.  She thought it was an accident and moved backward.  When defendant withdrew his hand, however, he more firmly touched both breasts.  The

contact involved her nipples. Defendant was charged with one count of second-degree criminal sexual conduct for his actions toward K.W.

The second student, R.D., testified that defendant was her math teacher in the 1993-1994 school year. Sometimes, defendant rubbed her shoulders. On occasion, he slipped his hand onto her breast, in close proximity to the nipple. He then moved his hand around the area. At other times, defendant knelt next to R.D.'s desk and rubbed the inside of her thigh, up to the point where her legs met. Defendant was charged with one count of second-degree criminal sexual conduct for his actions toward R.D.

The third student, J.T., testified that defendant was her seventh-grade math teacher during the 1998-1999 school year. Defendant often rubbed her shoulders and back. In 1998, shortly before the holidays, defendant slid his hand from J.T.'s shoulder onto her breast, stopping just above the nipple. Defendant engaged in similar conduct on two other occasions in a period of several weeks. Each time, he patted her breast after placing his hand on it. On a fourth occasion, defendant's hand moved all the way down the victim's breast and cupped it. Defendant was charged with four counts of second-degree criminal sexual conduct for his actions with respect to J.T.

Defendant's theory of the case was that the victims fabricated false allegations against him. Defendant denied the charges and questioned whether he would have engaged in the alleged sexual contact in front of other students. The prosecutor's theory of the case was that defendant created an atmosphere wherein he often touched his students. He groomed or conditioned them to think of him as a "touchy feely" or a hands-on teacher. He did this so that he could take advantage of female students when opportunity presented itself and so that he could always argue that his conduct was not sexual but was accidental or inadvertent.

*     *     *

Defendant called numerous witnesses to testify that while he often touched the shoulders of students and other adults, he was never seen engaged in inappropriate behavior. Defendant also disputed factual testimony given by the prosecution's witnesses. The jury reached a verdict with respect to only one count involving J.T. They deadlocked on the remaining counts.

*People v. Dennis James Monehen*, No. 229626, slip op. at 1-2, 3.[1]

_____

[1] The court notes that petitioner's first jury trial resulted in a mistrial on April 26, 2000. Trial Trans. VIII at 794-96 (docket no. 24).

Petitioner presented the following six issues in his direct appeal to the Michigan Court of Appeals:

I.    Whether reversible error and a violation of [petitioner's] federal and Michigan Constitutional rights to a fair trial occurred when the court allowed the prosecution to introduce MRE 404(b) evidence over timely objections?

II.   Whether reversible error occurred when the trial court ruled that the testimony of eleven witnesses could be admitted pursuant to the "proven to be false doctrine"?

III.  Whether the trial court committed reversible error when it denied [petitioner's] motion to sever?

IV.   Whether the trial court committed reversible error when it denied [petitioner's] motion for in camera review of privileged records relating to one of the complainants?

V.    Whether a totality of trial errors justifies relief?

VI.   Whether the trial judge erred in scoring the sentencing guidelines, in finding that there were substantial and compelling reasons to depart, and in determining the degree of an appropriate departure?

*See* Brief on Appeal (docket no. 44).  The Michigan Court of Appeals affirmed the conviction.

*People v. Dennis James Monehen*, No. 229626.

Petitioner raised thirteen issues in his application for leave to appeal to the Michigan Supreme Court:

I.    Whether the reasons given by the circuit court in support of the upward departure were substantial and compelling as required by M.C.L. § 769.34(3)?

II.   Whether the trial court complied with the "states on the record" requirement of M.C.L. § 769.34(3)?

III.  Whether the court of appeals used the correct standard of review?

3

IV.     Whether the standard of review that should be used by this court to evaluate what the trial court and the court of appeals did should be the *Fields* standard of review?

V.      Whether the trial court and the court of appeals in the instant case used the wrong standard when deciding whether the degree of departure was authorized by the guidelines?

VI.     Whether the court of appeals used the wrong standard of review when scoring the offense variables?

VII.    Whether the trial court erred in scoring offense variables and whether the court of appeals erred in affirming the improper scoring?

VIII.   Whether [petitioner's] due process rights under the Michigan and federal constitutions were violated when [petitioner] was not given notice about the court's intent to depart?

IX.     Whether reversible error and a violation of [petitioner's] federal and Michigan Constitutional rights to a fair trial occurred when the court allowed the prosecution to introduce MRE 404(b) evidence over timely objections?

X.      Whether the trial court erred when it ruled that otherwise excluded evidence of eleven witnesses could be admitted under the "proven to be false" doctrine?

XI.     Whether the trial court and the court of appeals erred in the denial of [petitioner's] motion to sever?

XII.    Whether the trial court and the court of appeals committed reversible error by not ordering an *in camera* review of the complainant's privileged records?

XIII.   Whether the totality of the errors warrant relief?

Application for leave to appeal (docket no. 45). The Michigan Supreme Court held the matter in abeyance pending its decision on two other cases that could resolve the issues raised in petitioner's application. *People v. Dennis James Monehen*, No. 122960 (Mich. May 30, 2003). The application was subsequently denied. *Id.* (Sept. 30, 2003).

4

After conclusion of petitioner's direct appeal, the trial court denied petitioner's motion for relief from judgment pursuant to MCR 6.500 *et seq*., which raised the following issue:

> [Petitioner] is entitled to resentencing where the sentencing judge unconstitutionally increased the statutory sentencing guidelines range and departed upward from the same based upon alleged facts not proven to a jury beyond a reasonable doubt, in violation of *Blakely v. Washington*, and where [petitioner] can demonstrate a retroactive change in law and/or the good cause and actual prejudice required by MCR 6.508(D).

*People v. Dennis J. Monehen*, Muskegon Circuit Court No. 99-043313-FH (Opinion and Order) (Dec. 3, 2004) (docket no. 46).

Petitioner appealed this ruling to the Michigan Court of Appeals framing the issue as follows:

> Did the trial court abuse its discretion in denying [petitioner's] motion for relief from judgment where the sentencing judge unconstitutionally increased the statutory sentencing guidelines range and departed upward from the same based upon alleged facts not proven to a jury beyond a reasonable doubt, in violation of *Blakely v. Washington*, and where [petitioner] demonstrated a retroactive change in law and/or the good cause and actual prejudice required by MCR 6.508(D)?

Application for leave to appeal (docket no. 46).  The Michigan Court of Appeals denied the application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Dennis James Monehen*, No. 259864 (Mich. App. June 24, 2005).  Petitioner raised the same issue in his application for leave to appeal to the Michigan Supreme Court, which that court denied.  *People v. Dennis James Monehen*, No. 129320 (Mich. Dec. 27, 2005).

Petitioner, through counsel, raised the following issues in his federal habeas petition:

I.    Whether the admission of the voluminous amount of 404(b)/proven to be false evidence constituted a failure to observe the fundamental fairness essential to the very concept of justice, in violation of the Fourteenth Amendment to the United States Constitution?

5

II.    Whether the failure of the trial court to conduct an *in camera* review of the complainant's privileged records denied [petitioner] a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution?

III.   Whether the denial of [petitioner's] motion to sever resulted in prejudice so great as to deny [petitioner] a fair trial in violation of the Fourteenth Amendment to the United States Constitution?

IV.    Whether the sentencing judge increased the statutory sentencing guidelines range and departed upward from those guidelines based upon alleged facts not proven to a jury beyond a reasonable doubt, in violation of *Blakely v. Washington*, and in contravention of the 6th and 14th Amendments to the United States Constitution?

Petition at p. vii.

## II.    Exhaustion and procedural default

Issues III and IV are procedurally barred.

### A.    Unexhausted claims (Issue III)

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek relief in federal court pursuant to § 2254, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).

Petitioner has failed to exhaust a federal constitutional issue with respect to Issue III, because he did not fairly present this federal issue to the state courts.  A habeas petitioner must present his claim to the state courts as a federal constitutional issue , not merely as an issue arising

6

under state law. *Franklin v. Rose*, 911 F.2d 322, 325 (6th Cir. 1987). In *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), the Sixth Circuit identified four actions that a petitioner can take which are significant to the determination of whether the substance of a claim has been "fairly presented" to the state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (citation omitted). Here, although the habeas petition filed in this court does make brief references to the due process issue discussed in *United States v. Lane*, 474 U.S. 438 (1986), petitioner did not raise this federal issue in the state courts, as outlined in *Brigano*. Rather, his claim was brought as a matter of state law, including arguments that the trial court misapplied the state court's severance rule, MCR 6.120(B). Under these circumstances, petitioner's claim is unexhausted for failure to present a federal issue.

As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice to allow the petitioner to present his claims to the state courts. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). Here, however, petitioner has already filed his motion for post-conviction relief pursuant to MCR 6.500 *et seq.* and has no further avenue left to exhaust in the state courts. Because petitioner failed to give the state courts a "full and fair" opportunity to resolve Issue III, he cannot cure the failure because the state court remedies are no longer available. This claim is subject to the procedural default doctrine. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). Issue III is discussed further below.

7

### B.        State Procedure Bar (Issue IV)

In Issue IV, petitioner contends that his sentence was impermissibly increased because the trial judge scored his sentencing guidelines offense variables on facts not reflected in the jury verdict and used facts not proven to a jury to depart above the state sentencing guidelines.[2]  Petitioner contends that the trial court's actions violated the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).   *Blakely* involved the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge.   Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court held that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  *Blakely*, 542 U.S. at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Petitioner did not raise the *Blakely* issue in his direct appeal.   Rather, the first time he raised this constitutional sentencing issue was in his post-appeal motion for relief from judgment.   Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal this claim because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).   The Sixth Circuit has held that MCR 6.508(D) is a valid

---

[2]To the extent that petitioner's Issue IV contests scoring errors by the trial court, such claims are not cognizable on federal habeas review.  The state's computation of a petitioner's prison term involves a matter of state law that is not cognizable on federal habeas review.  *See  Kipen v. Renico*, No. 02-1742, 2003 WL 21130033 at *1 (6th Cir. May 14, 2003), *citing Estelle*, 502 U.S. 62, 68 (1991).  *See also, Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

8

procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review. *See Howard*, 405 F.3d at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.

### C.  Procedural Default (Issues III and IV)

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

As previously discussed, Issue III is subject to the procedural default doctrine because plaintiff has no state procedure remaining available to raise and exhaust this federal due process

9

claim.  Petitioner's Issue IV is subject to procedural default because he failed to raise it in the manner required under state law.

### D.      Cause for the procedural default

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner did not allege any "cause" for the procedural default of Issues III and IV. In the absence of cause for the procedural default, it is unnecessary to consider any prejudice resulting from these alleged errors of federal law.

### E.      Fundamental Miscarriage of Justice

A petitioner's failure to demonstrate cause prevents federal review of  his habeas claims unless the court's failure to do so will result in a  "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  However, this exception to the procedural default doctrine is extremely limited.  "To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving," the Supreme Court  "explicitly tied the miscarriage of justice exception to the petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Thus, to meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted  to find him

guilty beyond a reasonable doubt." *Id.* at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000) ("in order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him").  Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.  Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted.

Petitioner has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's Issues III and IV are procedurally barred and not subject to habeas review.[3]

---

[3] Even if this court was able to reach petitioner's *Blakely* claim, the claim would fail for two reasons. First, *Blakely*, which was issued after petitioner's conviction was affirmed on direct appeal, does not apply retroactively to this habeas action. *See Lang v. United States*, 474 F.3d 348, 353 (6th Cir.2007); *Humphress v. United States*, 398 F.3d 855, 860-62 (6th Cir.2005). *See also*, *In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (observing that "[n]o court has yet determined whether *Blakely* created a new rule of constitutional law made retroactive to cases on collateral review" and that "[r]egardless of whether *Blakely* established a 'new rule of constitutional law' . . . the Supreme Court has not declared *Blakely* to be retroactive to cases on collateral review").

Second, even if *Blakely* was retroactive, it is inapplicable.  Petitioner's sentence of 7 1/2 to 15 years was within the maximum possible sentence for second-degree CSC, which carried a punishment of imprisonment for not more than 15 years. M.C.L. § 750.520c.  Relying on *Blakely*, petitioner claims that the sentencing guidelines range was enhanced by the scoring of offense variables based on facts not reflected in the jury verdict and that the trial judge found facts not proven to the jury beyond a reasonable doubt to depart above the guidelines range.  Petitioner's Memo at 59.  Petitioner's claim is without merit.  Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term.  The maximum sentence is not determined by the trial judge, but is set by law.  *See People v. Drohan*, 475 Mich. 140, 160, 715 N.W.2d 778 (2006) (*citing* M.C.L. § 769.8).  Only the minimum sentence is based on the applicable sentencing guideline range.  *Id.*; *and see People v. Babcock*, 469 Mich. 247, 255 n. 7, 666 N.W.2d 231 (2003) (*citing* M.C.L. § 769.34(2)).  Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence.  *Drohan*, 475 Mich. at 160.  Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not violate *Blakely*.  *See Blakely*, 542 U.S. at 304-05, 308-09;  *Lipsey v. Bell*, 1:08-cv-60, 2008 WL 1836953 at *4 (W.D. Mich. April 22, 2008) (listing cases).

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner's remaining claims as set forth in Issues I and II are exhausted and subject to federal habeas review.  Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.  *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

12

## IV.    Petitioner's habeas claims

## A.    Trial Court's admission of MRE 404(b) evidence

First, petitioner contends that "voluminous amount" of "404(b)" evidence admitted in this case violated his due process rights under the Fourteenth Amendments.  The Michigan Court of Appeals concluded that the trial court did not abuse its discretion in admitting the challenged evidence under MRE 404(b), addressing the issue as follows:

> During the investigation in this case, defendant denied any physical contact with his students, stating that he had learned his lesson from a prior, formal reprimand and that he went out of his way to keep his hands away from students. Defendant indicated that he totally refrained from touching students.  The jury heard testimony that, in the 1993-1994 school year, defendant was formally reprimanded for inappropriate nonsexual contact, which included rubbing the shoulders and touching the hair of a seventh-grade math student.

> The prosecutor presented eleven female student witnesses who testified that they were in defendant's math classes during the 1998-1999 school year.  Two of the witnesses testified that they saw defendant touch J.T. on the shoulders on several occasions.  Seven of the witnesses testified that defendant touched their shoulders or the shoulders of other girls, that he touched the hair of female students, either twirling it or blowing on it, and that he called some girls by inappropriate names like "big Mama."  One witness testified that, on one occasion while defendant was at her desk, he used his red pen to write little red dots on her knuckles.  The remaining student witness testified that defendant pulled a stray string or thread off of her shirt and, in the process of doing so, touched her left breast.  Defendant subsequently held the string up to his mouth and blew it away.  Before the testimony of the witnesses, the trial court issued a cautionary instruction, informing the jury that the witnesses were called to contradict defendant's claim that he never touched students at all and that the testimony could not be used to convict defendant because he was a bad person.  The information could be considered, however, with respect to whether defendant had a plan or scheme.

> The prosecutor also presented the testimony of four former students.  The first, Deanne Kiely, testified that in the mid-1970s she attended the middle school where defendant taught math.  Kiely had a social relationship with defendant.  She was a cheerleader and he was the boys' basketball coach.  Defendant drove Kiely home on occasion.  Sometimes they stopped in a church parking lot and talked.  Kiely also visited defendant's home.  The last time she visited, defendant told her that

he liked "kissing little titties."  Kiely testified that defendant physically touched her breasts and thighs.

Kari McCamant testified that when defendant was her seventh-grade math teacher in the 1980s, he often put his arm around her shoulders and rubbed her back. Eventually, he started to move his hand from her shoulders to her breast.  He cupped her whole breast with his hand.  This behavior frequently took place during class.

Kimberly Shoemaker testified that when defendant was her math teacher in the early 1970s, he moved her desk to the front of the classroom, actually touching his desk.  When defendant was at his desk, he used his feet to touch her feet. Sometimes defendant pulled her hair away from her face and shoulders.  On one occasion defendant offered to give Shoemaker a ride home from school.  He first stopped at his own home and asked her inside to see it.  Once inside, he touched her shoulders and put his hand on her breast.  She left and walked home.

Wendy Rockwell, who was aged thirty-seven at trial, testified that defendant was her lunchroom monitor at the middle school.  Defendant often sought Rockwell out for conversation.  He stood uncomfortably close and stroked her long hair.  When he did, he touched her breasts.  He also wrote hall passes to permit her to leave her English class and visit him in the cafeteria study hall that he monitored.  Rockwell sat behind defendant's desk in the study hall and he talked to her about her boyfriend. They talked in whispered conversation and defendant's lips occasionally touched Rockwell's earlobes.

The prosecutor also called defendant's former neighbor, Rick Homan, who testified that on a couple of occasions in the late 1970s and early 1980s, defendant confided that he touched the breasts of his students.  Defendant boasted that his conduct was not obvious because he touched the students while pretending to brush their hair back or pick a stray hair or thread off of their chest.  Defendant once told Homan that "their titties are so fine at that age."

\*       \*       \*

Defendant first argues that the trial court erred in admitting evidence of other bad acts under MRE 404(b). We review this preserved evidentiary issue for an abuse of discretion.  *People v. Crawford*, 458 Mich. 376, 383; 582 NW2d 785 (1998).

MRE 404(b) provides:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

14

scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in this case.

\*     \*     \*

The prosecutor articulated proper purposes for the evidence under MRE 404(b), including that the evidence demonstrated a common plan or scheme, intent and lack of fabrication. The prosecutor also demonstrated that the similar-acts evidence was logically relevant to demonstrate a common plan or scheme and to demonstrate intent. It was not offered solely to show defendant's propensity to commit crime.

The evidence of the charged conduct was sufficiently similar to the evidence of the uncharged conduct to support an inference that they were manifestations of a common plan, scheme or system.  [*People v. Katt*, 248 Mich.App 282, 304; 639 NW2d 815 (2001), *lv gtd in part on other gds* 466 Mich. 889; 649 NW2d 72 (2002)], *citing People v. Sabin (After Remand)*, 463 Mich. 43, 63; 614 NW2d 888 (2000). *See also* [*People v. Pesquera*, 244 Mich.App 305, 319; 625 NW2d 407 (2001)].  The charged and uncharged acts involved common features beyond mere commission of acts of impermissible sexual contact, to wit: (1) all of the similar-acts witnesses were students at the school where defendant taught; (2) all were female and were of similar age; defendant had an authoritative role over all of them as a teacher and coach; (3) defendant touched all of them in nonsexual ways; and (4) in some instances, defendant touched their breasts and thighs.  There is "such a concurrence of common features" between the charged and uncharged acts that the charged acts are "naturally to be explained as caused by a general plan of which they are individual manifestations." *Katt, supra* at 306. The prosecutor's theory was that defendant engaged in a common plan or scheme of grooming and manipulating his students to accept his touchings, which in turn allowed him to engage in criminal touchings when the opportunities arose. In other words, defendant ingratiated himself into his students' confidence and conditioned them to accept his nonsexual touchings in order to take advantage of them.  The similar-acts evidence supported this theory.

With respect to intent, the prosecutor was required to prove that defendant touched the three victims for sexual gratification or arousal.  MCL 750.520c(1); MCL 750.520a(k). The similar-acts evidence supported that defendant acted for sexual gratification. *People v. Knapp*, 244 Mich.App 361, 380; 624 NW2d 227 (2001).  He made statements to Kiley and Homan that he liked the breasts of his students.  Some of the similar-acts witnesses testified that defendant touched their breasts after previously engaging in nonsexual contacts.  This evidence was not only logically relevant to prove that defendant acted for his own sexual gratification in the instant case, it also negated that the victims misconstrued defendant's actions.  In

15

other words, there was no mistake with respect to the nature of the conduct. It was purposeful. In addition, the evidence was also logically relevant to rebut the charge of fabrication. *Id.*

Defendant also argues that the evidence was unfairly voluminous and detailed, that there was a risk of jury confusion, and that the evidence was, in some cases, extremely old. He argues that the probative value was substantially outweighed by the danger of unfair prejudice. MRE 403. We disagree. The similar-acts evidence was presented in a straightforward manner with little extraneous information or detail. While the evidence was voluminous, no authority supports that this fact, by itself, requires a finding of prejudice sufficient to warrant preclusion under MRE 403. In addition, we reject defendant's argument that some of the similar-acts evidence was too old to be relevant. The argument is unsupported by any authority and is abandoned. *People v. Piotrowski*, 211 Mich.App 527, 530; 536 NW2d 293 (1995). Moreover, it is disingenuous. The evidence, reaching as far back as defendant's early days at the same middle school, demonstrated a long term, continuing plan or scheme. Finally, nothing in the record suggests that there was a risk of confusion or a risk that the jury would be overwhelmed and unable to follow their instructions. To the contrary, the prosecutor carefully delineated the charged conduct in both opening statement and closing argument, and he clearly differentiated between the similar-acts evidence and the charged conduct. He specifically informed the jury that the similar-acts evidence could be used only to determine if defendant had a plan or scheme to groom his students with nonsexual touches so that he could take advantage when opportunity presented itself. Further, he indicated that the jury could consider the evidence when determining whether the touches were accidental or were intentional and for a sexual purpose. The prosecutor reminded the jury that defendant could not be convicted for the similar-acts conduct and that he could not be convicted based on a finding that he was a bad person. The prosecutor never improperly argued lustful disposition, i.e., that defendant was sexually attracted to his female students and must therefore be guilty of the charged conduct. We note that while the prosecutor recapped the MRE 404(b) evidence in detail in his closing argument, a prosecutor is entitled to argue the evidence and all reasonable inferences from it. *People v. Bahoda*, 448 Mich. 261, 282; 531 NW2d 659 (1995). The prosecutor did not utilize the MRE 404(b) evidence for any improper purpose. Moreover, the jury received clear cautionary instructions from the trial court during trial and during final instructions.

*People v. Dennis James Monehen*, No. 229626, slip op. at 2-6 (footnotes omitted).

Federal habeas review is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

"[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990).  Consequently, State court rulings on the admission of evidence

are not subject to federal habeas review unless the error denied petitioner a fundamentally fair trial.

*Clemmons*, 34 F.3d at 357-358; *see Estelle*, 502 U.S. at 67-70.  State court rulings cannot rise to the

level of a due process violation unless they "offend some principle of justice so rooted in the

traditions and conscience of our people as to be ranked as fundamental."  *Bugh v. Mitchell*, 329 F.3d

496, 512 (6th Cir. 2003) (internal quotations and brackets omitted).

      Petitioner has not shown that the trial court's admission of MRE 404(b) evidence

offended a fundamental federal principle of justice.  The Michigan Court of Appeals found that the

trial court properly admitted this "other acts" evidence to support an inference that petitioner's

previous acts were manifestations of a common plan, scheme or system, and to support an inference

that petitioner acted for sexual gratification.   However, even if the trial court had committed error

in admitting the evidence, such an error does not implicate a federal constitutional right.  "There is

no clearly established Supreme Court precedent which holds that a state violates due process by

permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at 512.

Accordingly, petitioner's claim should be denied.

### B.    *In camera* review of privileged records

      Finally, petitioner contends that the trial court should have performed an *in camera*

review of the victim (J.T.'s) school records pursuant to the procedure set forth in MCR 6.201(C)(2).

The Michigan Court of Appeals addressed the issue as follows:

> Defendant next complains that the trial court erred when it refused to order
> an *in camera* review of J.T.'s school and counseling records.  A decision to order an
> in camera review of records is discretionary and is reviewed for an abuse of
> discretion.  *People v. Fink*, 456 Mich. 449, 458; 574 NW2d 28 (1998); *People v.
> Laws*, 218 Mich.App 447, 455; 554 NW2d 586 (1996).  "An abuse of discretion

exists only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling." *Id.*

> [I]n an appropriate case there should be available the option of an *in camera* inspection by the trial judge of the privileged record on a showing that the defendant has a good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense. [*People v. Stanaway*, 446 Mich. 643, 677; 521 NW2d 557 (1994).]

The mere showing that a record exists does not warrant an *in camera* review.

In this case, the trial court determined, after a lengthy hearing, that defendant produced nothing of substance to support his speculations that the school and counseling records contained information material to his defense. Defendant produced an affidavit from his own private investigator to support his request for the in camera review. The affidavit contained second-hand information, which was not attributed to any identifiable person. The information included that J.T. was from a troubled home; that she had a history of running away from home; that she had a truancy problem; that she was extremely emotional, needy and self-conscious; that she was an attention seeker; that she needed peer approval; that she was a poor math student; that she knew how to manipulate people to get her way; and that she was histrionic and outgoing. The affiant further indicated that he understood that J.T. was treated or received counseling at two facilities as well as through the school system, and further, that she may have a chemical imbalance that "supposedly caused her to have difficulty" telling right from wrong. Defendant argued, based on the affidavit, that J.T.'s school and counseling records may assist him in proving any or all of his four defense theories: that J.T. felt left out of the biggest event in the school and sought to become the center of attention by making accusations and obtaining approval and sympathy from her peers; that J.T. was angry and upset that she was a poor math student; that J.T. had a troubled home life and that men she encountered after running away influenced her emotional state of mind; or that J.T. had a chemical imbalance, which affected her ability to distinguish between truth and falsity.

Defendant offered no evidence to support the alleged information in the affidavit, with one exception. Steven Cousins, the principal of the middle school at issue, testified that he had heard from others that J.T. ran away from home on two occasions. Cousins did not confirm any of the other information from the affidavit. There was simply no basis to verify the information. More importantly, there was no basis to conclude that the records might contain material evidence necessary for the defense. Defendant was on a fishing expedition to find any information that could possibly assist him in presenting his case. Therefore, we agree with the trial court

that defendant failed to articulate a good faith basis for believing that information of the type sought may actually be in the records. A defendant's generalized assertion that the records might contain evidence useful for impeachment on cross-examination is insufficient to support the request for an in camera review. *Stanaway*, *supra* at 681. "This need might exist in every case involving an accusation of criminal sexual conduct." *Id.* Because defendant failed to meet his burden of demonstrating the need for an in camera review, the trial court's denial of the motion for an in camera review was justified.

*People v. Dennis James Monehen*, No. 229626, slip op. at 8-10.

Petitioner contends that the Michigan Court of Appeals unreasonably applied established federal law as announced in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) and as set forth in *Stanaway*, *supra*. Specifically, petitioner contends that in *Ritchie*, the Supreme Court established the test for an in camera review as "some plausible showing of how the evidence would have been both material and favorable to the defense." Petitioner's Memo at 47, citing *Ritchie*, 480 U.S. at 59, fn. 15. Petitioner further states that the Michigan Supreme Court's formulation in *Stanaway* is not appreciably different, i.e., that "the defendant had a good faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *Stanaway*, 446 Mich. at 677. Petitioner contends that there is no requirement under the "*Ritchie/Stanaway*" test that the information be "confirmed" or "verified" as the Michigan Court of Appeals concluded. Petitioner's Memo at 47.

The court disagrees. In *Renusch v. Berghuis*, 75 Fed. Appx. 415 (6th Cir. 2003), the Sixth Circuit clarified that the "reasonable probability" set forth in *Stanaway* was a more demanding standard of review than the so-called "plausible showing" standard discussed in *Ritchie*. In *Renusch*, the defendant was charged with molesting a girl. The defendant asserted that the trial court abused its discretion in denying access to the girls's privileged counseling records, arguing that the records would establish that the girl had a dysfunctional family and that her recent experiences "could have

easily generated false accusations." *Renusch*, 75 Fed. Appx. at 422. These assertions are similar to those raised in the present case.

In the *Renusch* opinion, the Sixth Circuit distinguished Michigan's standard set forth in *Stanaway* from the "rule" set forth in *Ritchie*:

> This analysis was neither in conflict with, nor an unreasonable application of, any United States Supreme Court precedent. The seminal Supreme Court case in this area is *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), in which the defendant, Ritchie, had allegedly molested his daughter. The daughter had told her story to the police, who directed her to Pennsylvania's Children and Youth Services ("CYS") agency, which in turn investigated the matter. Ritchie sought to discover the CYS's materials, arguing that they might lead him to favorable witnesses and unspecified exculpatory evidence, and they might contain a certain medical report he was looking for. The agency refused, citing a state statute that forbade it to disclose its materials except where (among other things) a court ordered it to do so. The trial court refused to allow discovery, and Ritchie appealed. The United States Supreme Court held that since there was no way to tell whether the CYS's information was material, and since the state's privilege was not absolute because the statute did provide Ritchie with some means ( i.e., a court order) to obtain the information, "we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused." *Id.* at 58. In a footnote, the Court pointed out that "[w]e express no opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to *anyone*, including law-enforcement and judicial personnel." *Id.* at 57 n. 14 (emphasis in original).

> This established that Ritchie was entitled to a review, but it did not answer the question of what a defendant's threshold burden is for obtaining an *in camera* review. The *Ritchie* Court addressed this somewhat, in a footnote:

> > The Commonwealth also argues that Ritchie is not entitled to disclosure because he did not make a particularized showing of what information he was seeking or how it would be material . . . . Ritchie, of course, may not require the trial court to search through the CYS file without first establishing a basis for his claim that it contains material evidence. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) ("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense"). Although the obligation to disclose exculpatory material does not depend on the

presence of a specific request, we note that the degree of specificity of Ritchie's request may have a bearing on the trial court's assessment on remand of the materiality of the nondisclosure.  *See United States v. Bagley*, 473 U.S. 667, 682-683, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.).

*Id.* at 58 n. 15.  The clearly established "rule" of *Ritchie*, then, is that, given a privilege statute like Pennsylvania's, a defendant is "entitled to have a [government social services] file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial," but only if the defendant has "establish[ed] a basis for his claim that it contains material evidence," e.g., by making "some plausible showing of how [the] testimony would have been both material and favorable to [the] defense."  *Id.* at 58 & n. 15.

*Renusch*, 75 Fed. Appx at 423-24 (footnote omitted).

In reaching this conclusion, the Sixth Circuit pointed out that the Ritchie case did not clearly establish a standard for the state courts:

It is not clear that the Supreme Court in *Ritchie* required state courts to use the "plausible showing" standard to determine whether a defendant has established "a basis for his claim."  That is, though *Ritchie* stated that a defendant cannot obtain an *in camera* review without "first establishing a basis for his claim that it contains material evidence," the Court did not directly state what that standard should be, and the words "plausible showing" appear only in the Court's parenthetical quote from another case.  *See* 480 U.S. at 58 n. 15.

*Id.* at 424, fn. 6.

The court then discussed Michigan's standard for in camera review developed in

*Stanaway*:

The arguably more demanding "reasonable probability" standard applied by the Michigan Court of Appeals was established by the Michigan Supreme Court in *Stanaway*, a case that distinguished *Ritchie*.  The *Stanaway* court was considering three Michigan statutory privileges, one of which was the sexual assault counselor-victim privilege, M.C.L. § 600.2157a(2), and the court held that for all of the privileges, the legislature intended "to preclude defendants from having any access to communications made in these counseling settings." 521 N.W.2d at 564, 567.  The court found that *Ritchie's* disclosure requirement did not apply to these Michigan privilege statutes because (1) "[p]art of the [ *Ritchie*] Court's rationale for upholding *in camera* inspection was the fact that the records were those of a

21

> government agency," *id.* at 569, and (2) *Ritchie* relied on the fact that Pennsylvania's statutory privilege was qualified, and allowed for the information to be used in judicial proceedings, but Michigan's privileges were absolute and did not allow for judicial use, *id.* at 569-70. The *Stanaway* court then established its "reasonable probability" requirement, without citing or expressly considering the reference in *Ritchie's* to a "plausible showing" standard. *See id.* at 574.

*Id.* at 424-35.

Finally, the Sixth Circuit concluded that by relying on *Stanaway*, the Michigan Court of Appeals' decision in Renusch's case did not violate § 2254:

> The *Stanaway* court adequately distinguished *Ritchie*, and hence in Renusch's case the Michigan Court of Appeals did not act contrary to clearly established Supreme Court precedent by applying Stanaway's "reasonable probability" standard, as opposed to the "plausible showing" standard referred to in *Ritchie*. We need not decide whether the Michigan courts have properly distinguished *Ritchie*. It is sufficient to conclude, as we do, that the *Stanaway* court's distinguishing of *Ritchie* was at least reasonable. The decision of the Michigan Court of Appeals applying the *Stanaway* standard is thus not contrary to, nor an unreasonable application of, Supreme Court precedent. . . .

*Id.* at 425.

Although *Renusch* is an unpublished decision, the Sixth Circuit's analysis distinguishing the standards applied in *Stanaway* and *Ritchie* is persuasive and applicable to petitioner's claim in this case. Here, the Michigan Court of Appeals construed Michigan's stricter *Stanaway* standard as requiring something more than the hearsay statements set forth in Cousins' affidavit, and further determined that there was no basis to conclude from these statements that the records might contain material evidence necessary for the defense. Whether the Michigan Court of Appeals properly applied *Stanaway's* "reasonable probability" standard in petitioner's case is an issue of state law. The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "[I]t is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.

For these reasons, the court rejects petitioner's claim that the Michigan Court of Appeals' application of the *Stanaway* standard is an unreasonable application of established federal law. Accordingly, petitioner's claim should be denied.

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: <u>February 12, 2009</u>          <u>  /s/ Hugh W. Brenneman, Jr.       </u>
                                        Hugh W. Brenneman, Jr.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).